## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS,
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **STEPHANIE J. OUBRE** | § | |
| | § | |
| **V.** | § | **CIV. ACTION NO. 1:25-cv-00188** |
| | § | **JUDGE** _____ |
| | § | |
| **THE DOW CHEMICAL COMPANY** | § | Jury |

### PLAINTIFF STEPHANIE J. OUBRE'S COMPLAINT

**TO THE HONORABLE COURT**:

**COMES NOW** STEPHANIE J. OUBRE ("Oubre" or "Plaintiff") complaining of THE DOW CHEMICAL COMPANY ("Dow" or "Defendant"), and for cause of action would respectfully show the Court the following:

### STATEMENT OF THE CASE

1.  The Texas Commission on Human Rights Act ("TCHRA") prohibits an employer from committing adverse employment actions against an individual with age as a motivating factor. Tex. Lab. C. §21.001 et seq. Here, the 57-year-old Ms. Oubre was an employee at the Dow plant for approaching her 30th year. She was qualified for the work she did at the plant. And, she suffered unlawful adverse employment actions at the hands of the Dow Manager and Group Leader - including her termination.

2.  Ms. Oubre was not ready nor was her family in a financial position to be without the paycheck she was earning through her work & career at the plant. The Dow Managers ignored that fact and suddenly pressed a "choice" upon Ms. Oubre: agree to voluntarily retire <u>or</u> have your 30-year employment at the plant terminated. They told Stephanie she had just 24 hours to "decide." Evidence of age discrimination exists in this case. Plaintiff was replaced by younger employees, otherwise treated less favorably than similarly situated younger employees, and otherwise discharged because of her age. Further, Dow's basis for Ms. Oubre's termination is pretextual and not worthy of belief.

## I.   PARTIES

3. Plaintiff, Stephanie J. Oubre, is an individual who resided in Texas at the time this cause of action arose and worked in Defendant's Orange County, Texas facility. She resides at 2218 Westway St., Orange, Texas 77630.

4. Defendant, The Dow Chemical Company, is a foreign corporation, is authorized to do business in Texas and can be served with process by serving its registered agent for service of process, CT Corp System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## II.   JURISDICTION

5. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a). The amount in controversy exceeds $1,000,000.00, and the lawsuit involves citizens of different states.

## III.   VENUE

6. The Eastern District of Texas is the appropriate venue for this case under 28 U.S.C. § 1391(b)(2) and (c)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Orange County, Texas and the Defendant is subject to personal jurisdiction in this judicial district. The non-resident Defendant has committed torts and/or violations of statutory provisions in Orange County, Texas (under TCHRA), has in the past and continues to do business in Orange County, Texas, has continuing contacts with the State and is amenable to service in the state.

## IV.  FACTS/CAUSE OF ACTION

**Stephanie Oubre's Decades-Long Employment at the Plant and Her Extensive Qualifications**

7. Plaintiff Stephanie J. Oubre was born July 31, 1967, and was 57 at the time of the incidents made the basis of this lawsuit. On or about May 15, 1995, Ms. Oubre began her career at the Sabine River plant in Orange, Texas.

8. Across Dupont and Dow mergers, and on into The Dow Chemical Company's ownership – at just a couple months shy of 30 years – Stephanie Oubre had been a faithful, award winning and diligent employee, thoroughly certified and successfully doing her job at the plant.

9. The Defendant is an "employer," and the Plaintiff an "employee" as those terms are defined in the TCHRA. Texas Labor Code Section 21.001 et seq. At all times relevant, the Plaintiff was employed by the Defendant.

10. Across those decades of experience in working with the plant's analytical tech team, Ms. Oubre had been trained, tested, certified, qualified, and awarded for her work performance as an Analytical Tech at Dow.

11. Ms. Oubre had maintained an employment record that met and exceeded expectations across her career at the plant. Per plant supervision and management evaluations and recommendations, Ms. Oubre was: continually commended/Spotlighted for outstanding work performance; added to various Plant Leadership teams; and repeatedly acknowledged for how well she performed her work, worked all tech shifts, fulfilled all Overtime requests, collaborated to build teams, repeatedly rescued and restored lab and customer functions, and shared the highest levels of knowledge and expertise. So respected was her attention to lab safety,

procedures and customer needs, that Ms. Oubre was frequently requested for and assigned the training of the new Analytical Tech onboarding team members.

12.     Known for her willingness to answer the needs of plant operations – always volunteering to work to keep the unit analytical processes functioning through day-to-day demands, accepting leadership assignments, and always answering the operation's need for overtime work - Stephanie Oubre was annually among the highest Analytical Tech wage earners via her seniority/years of service and her willingness to work the plant's overtime needs. Stephanie was known as an influential leader at the plant, an employee who was decades dedicated to the plant and her co-workers.

**Age Discrimination**

13.     Despite Ms. Oubre's certifications, qualifications and decades of faithful service in the performance of her work as a plant Analytical Tech, she was treated less fairly than her decades-younger fellow Analytical Techs, cut with the "choice" to "retire within 24 hours or be terminated," and replaced with decades-younger techs and new hires added to their analytical tech pool, including to the shifts Ms. Oubre worked.

14.     The Dow Managers' discriminatory actions came to a head during a busy work shift on 1/30/25. There, Ms. Oubre was blindsided with an instruction from the Dow Senior Analytical Leader Lacey Gardner to attend a "neutral meeting." The Dow Leader would not explain why Oubre was being sent to such a meeting. There, Ms. Oubre was told that she was "suspended," then she was escorted to the plant gate and told to talk to her immediate Dow Supervisor/Manager LaShea Njigha for an explanation of her suspension.

15.     After being shown to the plant gate, Oubre called Ms. Njigha from the plant parking lot. Again, no explanation was given for this sudden expulsion from her job. Ms. Oubre was told

that she would be contacted regarding when to return to the plant. On or about 2/3/25, Ms. Oubre was contacted and again told to be on a "neutral meeting" within the hour. On that meeting, Ms. Oubre was again blindsided - this time being told that she had a "choice" to retire or be terminated. She was told that she had just one day to decide.

16. Completely startled, confused, fearing the loss of pay, 30 years of accumulated benefits, health insurance, etc., and desperately feeling that she had no real alternative – near midnight on 2/3/25 Ms. Oubre emailed to her Dow Management that she would retire. Dow completed the constructive discharge on the next morning of 2/4/25 when her Supervisor (the Dow Analytical Operations Leader LaShea Njigha) then suddenly announced to all of Oubre's fellow Analytical Tech team members that Stephanie had "decided to retire." Ms. Oubre was mentally exhausted and devastated.

17. Unable to get out of bed, Ms. Oubre lay there thinking: she was 30-years fully qualified, fully tested, and fully credentialed to do the job she was doing at Dow; she was continually commended and added to Plant Leadership teams for how well she performed her work, worked all tech shifts, fulfilled all Overtime requests, collaborated to build teams, repeatedly rescued and restored lab and customer functions, and gladly shared the highest levels of her knowledge and expertise; and, so respected was her attention to lab safety, procedures and customer needs, that she was frequently requested for and assigned the training of the new Analytical Tech onboarding team members.

18. Right up to being shown the gate in January 2025, Dow had Ms. Oubre training her decades-younger replacements. As Ms. Oubre was being discharged with the "choice" to retire or be fired, and since her termination, the analytical tech work that she was performing was and

is now being performed by decades-younger workers and lower wage-earning new hires placed into her analytical tech team pool – including into the shifts she worked.

19. With no care for Ms. Oubre, her 30 years of faithful service, her family's financial situation, Dow's own policies and procedures, or the law, the Dow Managers pressed onward with her forced separation from the company - with age as a motivating factor.

## V. ADMINISTRATIVE PREREQUISITES/CONDITIONS PRECEDENT

20. The above facts are referenced as if fully set forth herein below. Through its employees, staff, personnel, representatives and/or agents acting in the course and scope of their employment with the right to control the details of Plaintiff's work and termination, Defendant unlawfully discriminated against Plaintiff.

21. The discriminatory actions, including the termination decision, were approved, authorized and ratified by Defendant Dow and its representatives.

22. Defendant's reason for termination constitutes a mere pretext. One of the motivating factors for the unwarranted adverse employment actions and termination of Plaintiff was intentional, willful and malicious age discrimination. These acts and omissions, whether taken singularly or in any combination, are a proximate cause of Plaintiff's injuries and damages as described below.

23. Therefore, on 3/22/25, the Plaintiff filed a complaint regarding age discrimination with the Texas Workforce Commission Civil Rights Division and the EEOC (attached as Exhibit A and incorporated by reference). The complaint was formalized on 4/8/25. On 4/22/25, the Plaintiff received a Notice of the Right to File a Civil Action from the Commission (attached as Exhibit B and incorporated by reference).

24. The Plaintiff brought this action alleging her state law claims within 60 days of receiving the Notice of the Right to File a Civil Action. The Plaintiff has exhausted all administrative prerequisites to bringing this action. All conditions precedent to the filing of this lawsuit have been performed or have occurred.

## VI.   DAMAGES

25. As a result of the Defendant's unlawful conduct, the Plaintiff has suffered and will continue to suffer damages in the form of lost back wages, lost future wages (i.e., front pay), compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in amounts to be determined by the triers of fact and within the jurisdiction of this court. Given the way her 30-year career at the plant was wrongfully destroyed and the negative impact on her wages, pension and retirement, in all reasonable probability Plaintiff will continue to suffer in this manner well into the future, if not for the balance of her natural life. Due to the unlawful discriminatory treatment and termination, Plaintiff lost wages, benefits and future earning capacity.

## VII.   EXEMPLARY DAMAGES – Malicious or Recklessly Indifferent Conduct

26. Finally, Defendant's conduct, as described above, constitutes the type of conduct for which exemplary damages may be awarded in that it was willful and malicious. Therefore, Plaintiff seeks exemplary damages in an amount to be determined by the trier of fact.

The Defendant engaged in unlawful discrimination with malice and with reckless indifference to the Plaintiff's rights. The court should therefore award exemplary damages against the Defendant in an amount to be determined by the triers of fact and appropriate to deter similar future misconduct.

27. Defendant's conduct described above, and that of its agents, servants, representatives and employees, acting within the scope of their employment (for which Defendant is vicariously and directly liable), constituted malicious conduct in that it was done with a specific intent by the Defendant to cause substantial injury to the Plaintiff or the acts and omissions, when viewed objectively from the standpoint of the Defendant at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to the Plaintiff and, the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of the Plaintiff. These acts or omissions, whether taken singularly or in any combination, were a proximate cause of Plaintiff's injuries and damages that are described herein.

## VIII.   ATTORNEY FEES

28. The Defendant's conduct as detailed above, and the resulting damage and loss to Ms. Oubre, have necessitated the Plaintiff's retention of counsel. The Plaintiff is, therefore, entitled to recover from the Defendant an additional sum to compensate the Plaintiff for a reasonable fee for such attorney's necessary services in the preparation and prosecution of this lawsuit, as well as a reasonable fee for any and all necessary appeals to other courts.

## IX.   JURY DEMAND

29. Plaintiff demands a jury trial and tendered the appropriate fee.

## X. AUTHENTICATION NOTICE

30. Plaintiff hereby gives actual notice to Defendant that any and all documents produced during discovery may be used against Defendant at any pretrial proceeding and/or trial of this matter without the necessity of further authenticating the documents. This notice is given pursuant to Rule 193.7 of the Texas Rules of Civil Procedure.

## XI.     PRAYER

31.     **WHEREFORE**, the Plaintiff requests that the Defendant be cited to appear and answer, and on final trial, the court enters judgment for the Plaintiff and against the Defendant for the following:

a. For back pay (wage payments, vacation pay, bonuses, and all other benefits and compensation due to Plaintiff), plus prejudgment interest as provided by law, from the date of the Plaintiff's termination until the date of judgment;

b. For an award of the present value of front pay (wage payments, vacation pay, bonuses, and all other benefits and compensation due to Plaintiff) for a reasonable period following the date of the judgment, calculated as of the date of judgment, plus post judgment interest calculated as of the date of the judgment until paid;

c. For additional compensatory damages in amounts to be determined by the triers of fact and within the jurisdiction of this court;

d. For exemplary damages against the Defendant in a sum to be determined by the triers of fact, as allowed by law;

e. For reasonable attorney's fees;

f.  For interest after judgment as provided by law;

g.  For costs of suit; and,

h.  All other relief, in law and in equity, to which Plaintiff may be entitled.

        Respectfully Submitted,

        THE TAFT LAW FIRM, P.C.
        _/s/ Tony R. Taft_____
        Tony R. Taft
        Bar No. 24008119
        1515 Woodvine Dr.
        Houston, Texas 77055
        713/465-8238 Telephone
        713/465-9400 Facsimile
        ttaft@thetaftlawfirm.com
        Attorney for Plaintiff Stephanie J. Oubre